# 13-3022-pr

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

➤➤◄◄

BRIAN FISCHER, SUPERINTENDENT,

*Respondent-Appellant,*

*v.*

PATRICK SMITH,

*Petitioner-Appellee.*

—————————

*On Appeal from the United States District Court
for the Southern District of New York*

## BRIEF FOR PETITIONER-APPELLEE

Lloyd Epstein
EPSTEIN & WEIL LLC
*Attorneys for Petitioner-Appellee*
225 Broadway, Suite 1203
New York, New York 10007
212-732-4888

# Table of Contents

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Statement of the Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

  A. The District Court Rules That Mr. Smith's Trial Counsel Was Ineffective for Failing to Move to Suppress Statements That Were Obtained from Mr. Smith Through a Straightforward *Massiah* Violation . . . . . . . . . . . . . . . . . . . . . . . 1

  B. The District Court Finds That Counsel's Incompetent Performance Prejudiced Mr. Smith . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

  C. The District Court Finds Prejudice and Grants the Habeas Petition . . . . . . . . 9

  D. The District Court Finds That *Martinez v. Ryan* Removes Any Procedural Bar to Granting Habeas Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

POINT I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

THE DISTRICT COURT CORRECTLY FOUND THAT TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO MOVE TO SUPPRESS UNDER *MASSIAH* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

  A. The District Court Correctly Found That Law Enforcement Violated *Massiah* By Endorsing a Situation in Which It Was Likely that a Jailhouse Informant Would Elicit Statements from Mr. Smith. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

  B. The District Court Correctly Found that Trial Counsel's Failure to Move to Suppress Under *Massiah* was Deficient . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

  C. The District Court Correctly Found Mr. Smith Was Prejudiced by the Improper Admission of His Statements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

  D. Respondent's Arguments that the Jailhouse Informant Did Not Become a State Agent after Agreeing to Testify Are Frivolous . . . . . . . . . . . . . . . . . . . . . . . 26

  E. The District Court Correctly Found that Counsel Was Ineffective Under Both the *De Novo* and the AEDPA Deferential Standards . . . . . . . . . . . . . . . . . . . . 30

POINT II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

THE DISTRICT COURT PROPERLY FOUND THAT *MARTINEZ V. RYAN* REMOVED ANY PROCEDURAL BAR TO CONSIDERING MR. SMITH'S PETITION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

# Table of Authorities

**CASES**

<u>United States Supreme Court</u>

*Arizona v. Fulminante*, 499 U.S. 279 (1991) . . . . . . . . . . . . . . . . . . . . . . . . <u>23</u>, <u>25</u>

*Brady v. Maryland*, 373 U.S. 83 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>14</u>

*Hamilton v. Alabama*, 368 U.S. 52 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>18</u>

*Harrington v. Richter*, __ U.S. __,131 S. Ct. 770 (2011) . . . . . . . . . . . . . . . <u>23</u>, <u>34</u>

*Johnson v. Williams*, ___ U.S. ___, 133 S. Ct. 1088; 2013 U.S. LEXIS 1610 (2013
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . )<u>32</u>, <u>33</u>

*Kimmelman v. Morrison,* 477 U.S. 365 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . <u>20</u>

*Maine v. Moulton*, 474 U.S. 159 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>18</u>, <u>26</u>

*Martinez v. Ryan*, __U.S. __; 132 S.Ct. 1309 (2012) . . . . . . . <u>vii</u>, <u>12</u>, <u>16</u>, <u>31</u>, <u>35</u>, <u>38</u>

*Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 119 (1964) . . . <u>vi</u>, <u>17</u>-<u>19</u>, <u>31</u>, <u>32</u>

*Panetti v. Quarterman*, 551 U.S. 930, 953 (2007) . . . . . . . . . . . . . . . . . . . . . . . <u>32</u>

*Strickland v. Washington*, 466 U.S. 668 (1984) . . . . . . . . . . . . . . . . . . . . . . . . <u>vi</u>

*Trevino v. Thaler*, __U.S.__, 133 S. Ct. 1911 (2013) . . . . . . . . . . . . . . . . . . <u>38</u>, <u>39</u>

*United States v. Henry*, 447 U.S. 264 (1980) . . . . . . . . . . . . . . . vi, 19, 26, 27, 29

*Wade v. Mayo*, 334 U.S. 672 (1948) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Williams v. Taylor*, 529 U.S. 362 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Yarborough v. Alvarado*, 541 U.S. 652 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . 34

<u>Federal Circuit and District Courts</u>

*Ayers v. Hudson*, 623 F.3d 301 (6th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . 27-29

*Cotto v. Herbert*, 331 F.3d 217 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Fischer v. Smith*, 2013 U.S. Dist. LEXIS 99263 . . . . . . . . . . . . . . . . . . . . 1, 20-24

*Harrison v. Cunningham*, 512 Fed.Appx. 40 (2d Cir. 2013) . . . . . . . . . . . . . . . . 21

*Lopez v. Greiner*, 323 F.Supp.2d 456 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . 20, 36

*Miranda v. Bennett*, 322 F.3d 171 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . 18

*Ramchair v. Conway,* 601 F.3d 66, 76 (2d Cir. 2010). . . . . . . . . . . . . . . . . . . . . 21

*Randolph v. California*, 380 F.3d 1133 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . 29

*Smith v. Fischer*, 2012 U.S. Dist. LEXIS 29010 *(*S.D.N.Y.) . . . . . . . . . . . . . 1, 20

*Smith v. Fischer*, 2013 U.S. Dist. LEXIS 12618 . . . . . . . . . . . . . . . . . . . . . . 1, 35

*United States v. Birbal*, 113 F.3d 342 (2d Cir. 1997) . . . . . . . . . . . . . . . 19, 27, 30

iv

*United States v. Brink*, 39 F.3d 419 (3rd Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. LaBare*, 191 F.3d 60 (1st Cir. 1999) . . . . . . . . . . . . . . . . . . . 27, 30

*United States v. Pannell*, 510 F.Supp.2d 185 (E.D.N.Y. 2007) . . . . . . . . . . 27, 28

*United States v. Stevens*, 83 F.3d 60 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . 19, 27

*Wray v. Johnson*, 202 F.3d 515 (2nd Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . 26

*Young v. Conway*, 698 F.3d 69 (2nd Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . 23, 32

State

*People v. Clermont*, 22 N.Y.3d 931 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*People v. Evans*, 16 N.Y.3d 571 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*People v. Lou*, 95 A.D. 3d 1035 (2d Dept. 2012) . . . . . . . . . . . . . . . . . . . . . . . . 36

*People v. Maxwell*, 89 A.D.3d 1108 (2nd Dept 2011) . . . . . . . . . . . . . . . . . . . 36, 39

*People v. Rivera*, 71 N.Y.2d 705 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

**STATUTES**

Federal

Fed.R.Civ. P. Rule 81(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Fed.R.Civ.P. Rule 52(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Fed.R.Civ.P. Rule 59. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

State

N.Y.C.P.L. §440.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 30, 37

N.Y.C.P.L. §§240.45(1)(a)-(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## Statement of the Issues

1.     Whether the district court correctly ruled that Mr. Smith's trial counsel was ineffective for failing to move to suppress statements elicited from Mr. Smith by a jail house informant *after* the informant agreed with law enforcement to testify against Mr. Smith? *Strickland v. Washington*, 466 U.S. 668 (1984); *United States v. Henry*, 447 U.S. 264 (1980)*; Massiah v. United States*, 377 U.S. 201 (1964).

2.     Whether the district court correctly ruled that the prosecutor was barred from asserting that Mr. Smith had procedurally defaulted his ineffective assistance/*Massiah* claim because the State failed to provide Mr. Smith with counsel in the first proceeding in which he was entitled to raise this claim? *Martinez v. Ryan*, __U.S. __; 132 S.Ct. 1309 (2012).

## Statement of the Case

**A. The District Court Rules That Mr. Smith's Trial Counsel Was Ineffective for Failing to Move to Suppress Statements That Were Obtained from Mr. Smith Through a Straightforward *Massiah* Violation**

### *1. The Jail House Informant Testifies that He Elicited Statements from Mr. Smith after Agreeing to Testify Against Him*

William Ferguson was already a seasoned informant when he met Patrick Smith at the Rikers Island jail. Ferguson had worked as a paid informant for a Brooklyn narcotics detective named Jimmy Irving, and, as a jailhouse informant, had provided information about a murder plot. *Fischer v. Smith*, 2013 U.S. Dist. LEXIS 99263 ("*Smith III*") (JA. 109, 113; Tr2. 410 456, 462, 464).[1] A career criminal, Ferguson told the jury that if informing did not help him on his current case, it would certainly be a "feather in his cap" for the next case (Tr2. 482). When Ferguson met Mr. Smith at the Rikers medical clinic, and learned that Mr. Smith was about to go on trial for murder, he knew exactly what he wanted to do.

Ferguson, who was in jail on a parole violation, ingratiated himself with Mr.

---

[1] The district court issued three opinions: *Smith v. Fischer*, 2012 U.S. Dist. LEXIS 29010 *(S.D.N.Y.) ("Smith I"); Smith v. Fischer*, 2013 U.S. Dist. LEXIS 12618 ("*Smith II*"); *Fischer v. Smith*, 2013 U.S. Dist. LEXIS 99263 ("*Smith III*"). Citations to these decisions are made by their Joint Appendix numbers ("JA"). In these opinions, the Court observed that the trial transcripts were not paginated consecutively, so it denoted by them by volume, with volume one, pretrial proceedings, denoted Trl. [page number] (November 18, 2003), volume two, trial, denoted Tr2. (Nov. 20-21, 24-27, Dec. 1-3, 2003), and volume three, sentencing, denoted Tr.3. (Dec. 22, 2003). *Fischer, III, at* fn.1. Mr. Smith has adopted the District Court's system for this Brief.

1

Smith as another "white guy" threatened by Black and Hispanic gangs (Tr2. 420-21), and persuaded Mr. Smith to show him his court papers. After obtaining a few relatively innocuous statements, Ferguson called one of his handlers, Det. Dellasandro. Det. Dellasandro called Det. Tracy, who was assigned to Mr. Smith's case. Dellasandro, Tracy, and Ferguson met the following day, and Ferguson told them about Mr. Smith. The detectives asked Ferguson if he would testify at Mr. Smith's trial and Ferguson agreed to do so. *Smith III* (JA. 111; Tr2. 405, 591, 593). Ferguson said that he disliked Mr. Smith because Mr. Smith was involved in a robbery in which an old man was shot (Tr2. 425, 427-28, 449). The detectives were careful not to take any notes. *Smith III* (JA. 108; Tr2. 404-5).

Ferguson then went to work. He had corrections officers bring Mr. Smith to the law library on three consecutive nights. According to Ferguson, the officers would "accommodate him" because he worked in the library. *Smith III* (JA. 111; Tr2. 423, 443). On each occasion, Ferguson questioned Mr. Smith and elicited admissions. *Smith III* (JA. 111; Tr.2 440, 441, 444, 447). The trial record was not clear whether Ferguson met with the detectives before or after the first meeting in the library. According to Det. Tracy's chronology, Ferguson agreed to testify against Mr. Smith *before* the first library meeting. According to Ferguson's chronology, he agreed to testify against Mr. Smith after the first library meeting. *Smith III, supra*, at fn. 3 (JA.

2

108; Tr2. 404-5).[2]

The detectives reached their agreement with Ferguson a few weeks after the trial court precluded admissions Mr. Smith had made to Det. Tracy. *Smith III* (JA. 100-01).

Ferguson testified to all of this at trial, but Mr. Smith's lawyer never did what any competent lawyer would have done: move to suppress under *Massiah* and *Henry*. "Although the possibility of a *Massiah* issue was briefly discussed" before openings, counsel never moved to suppress after the factual basis of the motion became obvious, that is, "after Ferguson testified to his agreement with the detectives and his further solicitation of information from Mr. Smith." *Smith III* (JA. 145, fn. 7). All counsel did was protest that Ferguson's testimony should be excluded because "there hasn't been total discovery and an inadequate (sic) background check" (Tr2. 460).[3]

---

[2] The district court did not resolve this issue because it found that the prejudice from the admission of the statements Ferguson elicited at the second and third library meetings was sufficient to establish prejudice under the second or "prejudice" prong of *Strickland v. Washington*, *supra*. *Smith III* (JA. 148-50); See pp.,11-13, 24-26, *infra*.

[3] Counsel's complaint was apparently directed at those portions of Ferguson's testimony in which Ferguson admitted to a federal felony conviction and working as Det. Irving's informant. Counsel's protest was somewhat ironic since he had agreed to begin the trial without receiving all of the discovery to which he was entitled, including the informant's full criminal record. *Smith III* (JA. 102, 123-24).

3

## 2. The District Court Finds That Counsel Was Ineffective for Failing to Object on *Massiah* Grounds

The district court had little difficulty finding that Mr. Smith's trial counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984). *Henry* and *Massiah* teach that once law enforcement singles out a particular inmate to an informant and the informant agrees to cooperate, the informant becomes an agent of the prosecution as to that inmate, and any subsequent statements elicited by the informant from that inmate must be suppressed as violative of the right to counsel. As the district court noted, "Indeed, in *Henry* . . . the Supreme Court found a *Massiah* and Sixth Amendment violation in analogous circumstances." *Smith III* (JA. 141). But Mr. Smith's counsel never moved to suppress under *Massiah/Henry*.

> The *Massiah* issue in this case is straightforward. It is well settled that once the government singles out the accused with an informant and is aware that the informant has access to the accused, that informant is a government agent with respect to later deliberately elicited statements. See *United States v. Henry*, 447 U.S. at 271 [remaining citations omitted]. Here, Petitioner's defense counsel was aware, and indeed Mr. Ferguson testified at trial, that Mr. Ferguson had agreed to testify for the prosecution before deliberately eliciting at least the second two library conversations from Mr. Smith. Mr. Ferguson's testimony on this issue was enough that defense counsel knew, or should have been aware, that a *Massiah* violation had occurred and that the statements should be suppressed. Despite this knowledge, defense counsel asked only for a hearing on Mr. Ferguson pertaining to his history as an informant, and never moved

4

> to exclude Mr. Ferguson's testimony under *Massiah* or its
> progeny.

*Smith III* (JA. 39-40).

The district court noted that the extent to which the corrections officers "accommodated" Ferguson by producing Mr. Smith in the library, and the fact that Ferguson just happened to encounter Mr. Smith "on the heels of the trial judge's preclusion of Smith's statements to the police," reinforced the conclusion that Ferguson was a police agent when he elicited the "law library statements," and raised a concern that Ferguson was already a police agent when he first met Mr. Smith at the clinic.

> On each of these occasions, Ferguson had Smith brought to him in the library by a corrections officer, and Ferguson testified that during these meetings he tried to gain Smith's confidence by telling him about his own case. That Ferguson appeared as an informant on the heels of the trial judge's preclusion of Smith's statement to the police, that the police officers took no notes of their meeting with Ferguson or Ferguson's initial call to Dellasandro, and that Ferguson, as an inmate, was able to have Smith brought to him in the library by a corrections officer all raise serious questions as to whether the police engaged in an intentional effort to secure Smith's incriminating statements. Regardless, viewing the evidence in the light most favorable to the state, the record establishes that Ferguson deliberately elicited at least two of the library statements after agreeing to testify against Smith, that the detectives were aware that

5

> Ferguson had access to Smith after their meeting, that this was or should have been apparent to Smith's counsel at trial, and that Smith's counsel failed to make a *Massiah* motion to suppress any of the library statements. Even under *Strickland*'s deferential standard, these facts demonstrate a manifest deficiency.

*Smith III* (JA. 140-41).

After trial, Mr. Smith a obtained copy of Ferguson's parole hearing minutes. These had never been produced by the prosecutor. Throughout the trial, the prosecutor insisted that Ferguson was not a state agent and that Ferguson had minimal contact with Det. Dellasandro before Ferguson first met Mr. Smith. The prosecutor represented that Ferguson reached out to Dellasandro after the initial "clinic conversation" because he felt that Dellasandro was a "nice guy" (Tr2. 406-7). This representation turned out to be completely false. At the parole hearing, Ferguson testified that he was about *to be registered as a confidential informant by Det. Dellasandro a few weeks before he elicited the admissions from Mr. Smith.*

> At a parole hearing on October 1, 2002, over a year prior to Mr. Smith's trial, Mr. Ferguson testified that he had been supplying information "locally" for approximately four years. (Parole Tr1. 5 (Dkt. No. 21).) At a parole hearing on November 10, 2003, several weeks prior to Mr. Smith's trial, Mr. Ferguson testified that on the morning of September 4, 2003, the day he was arrested for violating his parole for allegedly assaulting his girlfriend, he met with Detective Dellasandro and one other homicide detective

because "I do different things for different agencies out in the street and they were going to get me registered with the ATF." (Parole Tr2. 101-02 (Dkt. No. 22)). Mr. Ferguson further testified that "I was in the ATF, okay, Downtown Brooklyn, with two homicide detectives that were vouching for me because of the information. I was getting ready to make a phone call on the phone in the ATF office, right there, if Parole would have gave them the okay." (Parole Tr2. 116-17). After that meeting, Mr. Ferguson was arrested for violating his parole conditions.

*Smith* III (JA. 117-18).

The district court rejected Respondent's contentions that trial counsel's objection to Ferguson's testimony on the grounds that the prosecutor had not made full discovery was the equivalent of a *Massiah* motion. The district court also held as a matter of fact that counsel did not have a strategic reason for not moving under *Massiah*. The district court held that an attorney is obligated to bring relevant authority to the court's attention, and "Petitioner . . . is correct that counsel failed to appreciate the significance of the *Massiah* issue." *Smith III* (JA. 140, 145). The court found no "plausible explanation for [counsel] neglecting to exclude such damning testimony." *Smith III* (JA. 140).[4]

---

[4] Habeas counsel argued that the trial prosecutor's false representations as to Ferguson's status constituted prosecutorial misconduct. This point became moot in light of the district court's finding that trial counsel was ineffective.

**B.  The District Court Finds That Counsel's Incompetent Performance Prejudiced Mr. Smith**

Ferguson brought Mr. Smith to the library and questioned him on three consecutive nights.  According to Ferguson:

- On Thursday, October 23rd, Mr. Smith confessed that he and his co-defendant stole a hospital payroll in a "six figure" amount from "Washington Square Hospital."  Mr. Smith said that they took the money, dropped it in a waiting vehicle, and "went on their way" after Mr. Smith punched one guard and his co-defendant shot the other.  *Smith III* (JA. 112; Tr.2 440).

- On Friday, October 24th, Mr. Smith said that a defense investigator compared the victim's blood spots and the eyewitnesses' pre-trial statements, determined that the witnesses had seen the crime from a distance, and that this was "a major plus" for the identification defense.  Mr. Smith admitted that he had been seen fleeing by a young police officer, but wondered how the officer could identify him after seven years.  *Smith III* (JA. 112; Tr2. 441, 444).

- On October 25th, Mr. Smith said he was happy that his case had been severed from his co-defendant's, but was upset because his lawyer told him that his fee was $20,000, but told his father that it was $25,000.  *Smith III* (JA. 112; Tr2. 447).

The remainder of the evidence consisted exclusively of eyewitnesses whose descriptions of the perpetrators were inconsistent with that of Mr. Smith and whose memories had faded over time.  Mr. Smith was indicted in 2002 for a robbery/homicide which took place in 1996.

8

The defense case consisted primarily of an investigator who testified, as the informant said he would, as to the considerable distance between where the witnesses stood when they viewed the crime and the victim's blood spots (Tr2. 610-17). This only served to enhance the informant's credibility.

The trial prosecutor recognized the significance of Mr. Smith's admissions to the informant, and emphasized them in her summation. *Smith III* (JA. 115, 147, 150-51; Tr2. 707-714). She focused on the second and third library statements which, by all accounts, Ferguson elicited from Mr. Smith after agreeing to testify. She argued that many of the details about which Ferguson testified could only have come from Mr. Smith, including especially his account of the defense investigator's proposed testimony (Tr2. 712).

The jury, after asking for a readback of Ferguson's testimony, convicted Mr. Smith on all counts. *Smith III* (JA. 115, 150; Tr2. 770).

**C. The District Court Finds Prejudice and Grants the Habeas Petition**

The district court granted Mr. Smith's habeas petition. The district court echoing the trial judge, found the prosecution's case, absent Mr. Smith's admissions, weak. *Smith III* (JA. 146). The court found a "reasonable probability" that Mr. Smith would have been acquitted had his attorney made a proper *Massiah* motion. This

9

echoed the observation of the trial judge, who characterized Ferguson as a "reasonably important witness."

> Aside from Mr. Ferguson's testimony as to Mr. Smith's confessions, the evidence at trial consisted of eyewitnesses whose descriptions of the perpetrators were inconsistent with that of Mr. Smith, and whose memories had faded over the seven years between the crime and the trial. (Citations omitted). Mr. Smith was not arrested until six years after the crime, and there was no physical or scientific evidence tying him to it. Given the limited evidence aside from the informant's testimony, the prosecutor emphasized Mr. Ferguson's statements in summation, including those statements which Mr. Ferguson elicited after he had agreed to testify. (Tr2. 710-14.) During deliberations, the jury asked for read backs of Mr. Ferguson's testimony on December 2, 2003 and returned its guilty verdict the following day. (Tr2. 770.) *The state court judge who tried the case observed, "[i]t is reasonably clear to me, based upon the quality of the eyewitness testimony in this case, that the jailhouse informant had to be a reasonably important witness.*"

*Smith III* (JA. 146-47).[5]

---

[5] The conclusion that the case was weak without the informant was amply supported by the record. The prosecution argued Mr. Smith was the non-shooter in the robbery/felony murder. Eyewitnesses described the non-shooter as Hispanic (Tr2. 183-4, 283, 637-38). Mr. Smith is Irish. One witness described the non-shooter as 18-20 years old (Tr2. 183-4, 637-8). Another witness described him as 18-25 (T2. 278). Mr. Smith was 29 years old at the time of the crime. The only witness to describe the non-shooter's height said that he was 5'7" (Tr2. 183-4). Mr. Smith is 5'11". An off-duty police officer observed a man wearing dark sunglasses and a beard, whom he identified as Mr. Smith, fleeing from the scene. There was no proof that Mr. Smith had a beard, or how, seven years later, the officer could identify a man who wore dark sunglasses. No scientific or physical evidence linked Mr. Smith to the crime.

The district court expressly rejected the prosecution's contention that the erroneous admission of Ferguson's testimony was cumulative. The court assumed for its prejudice analysis that Ferguson did not become a police agent until after eliciting the first library statement, and expressly found that the second two library statements "added details that made Mr. Ferguson more credible and his testimony significantly more damaging."

> Before trial, defense counsel specified that his position would be to argue that Mr. Ferguson was lying, that he learned any information he testified about from the paperwork itself, and that Mr. Smith had not told him any details of the crime. The details of the statements from the second two library conversations made this argument futile. Indeed, instead of being "cumulative" to the original information, the second two library conversations added details that made Mr. Ferguson credible and his testimony significantly more damaging. Additionally, a series of confessions, if made to the same person, reinforce each other and can be used to assess the credibility of statements legally obtained. For instance, in *Arizona v. Fulminante*, 499 U.S. 279, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991), the Court determined that the presence of the first confession affected the "assessment of [the second confession's] credibility, and hence the reliability of the second confession might well have been influenced by the corroborative effect of the erroneously admitted first confession." *Id.* at 302. The Court therefore found that the admittance of the first confession was not harmless error despite its similarity to the second confession because it reinforced and made credible the second confession, especially where the other evidence in the case was limited. *Id.* Ultimately, the Court held that although the decision

11

might have been the same even without the first confession, "it [was] impossible to say so beyond a reasonable doubt." *Id.* Similarly here, there is a "reasonable likelihood" that without Mr. Ferguson's corroborating testimony of explicit details from the second two library conversations, testimony which the jury specifically requested in deliberations and which the prosecution relied heavily on in summations, the jury would have found Mr. Ferguson not credible and Mr. Smith would have been acquitted. See *Wray v. Johnson*, 202 F.3d 515, 526 (2d Cir. 2000)(in assessing wrongly admitted testimony's importance, court looked to importance of the testimony and whether "the prosecution has emphasized the wrongly admitted evidence" ). Thus, regardless of whether the first library conversation occurred before or after Mr. Ferguson agreed to testify, the second two library conversations are sufficient to constitute prejudice . . .

*Smith III* (JA. 149-150).

## D. The District Court Finds That *Martinez v. Ryan* Removes Any Procedural Bar to Granting Habeas Relief

The district court granted the petition in *Smith III*, its third and final opinion in the case. In *Smith I*, the court denied the petition on the grounds that the state post-conviction court had rejected Mr. Smith's post-conviction motion on an independent state procedural ground. The court suggested, however, that it might have granted the petition on the merits had it been procedurally permitted to do so.

*Martinez v. Ryan*, 132 S.Ct. 1309 (2012) came down shortly after *Smith I*. Mr. Smith promptly moved for reconsideration based on intervening law. Fed.R.Civ.P.

12

Rule 59. In *Smith II*, the district court granted the motion for re-consideration, finding that *Martinez* removed any state procedural bar.

In *Smith II*, the court summarized the relevant procedural history. The court noted that Mr. Smith had no choice but to file his initial N.Y.C.P.L. §440.10 post-conviction motion *pro se*. New York does not furnish indigents with counsel on post-conviction motions, and Mr. Smith's assigned attorneys on direct appeal refused to file one. Mr. Smith attached to his papers Ferguson's parole hearing minutes which revealed that Ferguson was Det. Dellasandro's long time informant (See, pp. 7, *supra*). Mr. Smith argued, as had his trial counsel, that he was prejudiced by not receiving sufficient discovery relating to the informant. He did not cite *Massiah*. The state judge, *who was not the trial judge*, denied Mr. Smith's motion.

Subsequently, Mr. Smith's family retained an attorney who, in a second §440.10 motion, argued that trial counsel was ineffective for failing to move to suppress under *Massiah* and by agreeing to begin trial without receiving certain discovery, including the full criminal record of the informant and all pre-trial statements of the prosecution's witnesses as required by N.Y.C.P.L. §§240.45(1)(a)-(b). *Smith I* (JA. 15). New counsel cited to both the trial minutes and the parole minutes. He obtained and attached Ferguson's psychiatric records, which had never been produced by the

13

prosecutor, and argued that the prosecutor had committed prosecutorial misconduct by her misleading statements about the informant, and by suppressing *Brady* material through her failure to produce the parole minutes and psychiatric records.[6] The prosecutor, in opposition, cited to unsworn conversations in which he claimed that Mr. Smith's trial counsel told the prosecutor that he believed his request for discovery was the equivalent of a *Massiah* motion.

The state court denied the second petition on the procedural ground that Mr. Smith could have raised the *Massiah* issue in his initial petition, but did not. N.Y.C.P.L. §440.10(3)(c). It expressly declined to reach the merits.

> This Court declines to reach the merits of Defendant's counsel claims. The People are correct in their assertion that the instant motion is procedurally barred and meritless. The defendant was in the position to adequately raise all issues he now makes in the previous motion but chose not to. See, C.P.L. §440.10(3)(c).
>
> Moreover, the defendant's bare claims of ineffective assistance of counsel do not meet *Strickland* (sic). In *Strickland*, the Supreme Court adopted a two-part test for evaluating claims of ineffective assistance of counsel. A "defendant must show that counsel's performance was deficient, and "that the deficient performance prejudiced

---

[6] *Brady v. Maryland*, 373 U.S. 83 (1963). The defense raised these issues in front of the district court on the habeas petition, but the court refused to grant the petition on this basis. "*Brady* material" refers to information in the prosecutor's possession which is helpful to the defense and that the prosecutor is required to disclose.

the defense" . . . The first prong . . . is a restatement of attorney competence, which requires a showing that counsel's representation fell below an objective standard of reasonableness (*Hill v. Lockhart*, 474 U.S. 52, 58 [1985]). The second prong, also known as the prejudice prong, "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. . . In order to satisfy this prong, a "defendant must show that there is a reasonable possibility that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial" (*Hill*, 74 U.S. at 59). In the case at bar, defendant has failed to provide any evidence showing that counsel was ineffective.

*People v. Smith, Bronx Supreme Court Decision* (JA. 12).

In *Smith I,* the district court found it "arguable" that Mr. Smith had "substantially complied" with §440.10(3)(c) given the "realities" of his *pro se* status. *Id.* (JA. 58) by laying out facts from which a court could reasonably infer a *Massiah* argument. Nonetheless, the district court felt compelled to "defer" to the state court's conclusion that the petition should be dismissed on an independent and adequate state procedural ground. *Id*. (JA. 58-59).

Soon thereafter, the United States Supreme Court decided *Martinez*, holding:

Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that

15

proceeding was ineffective.

*Martinez v. Ryan, supra,* 132 S. Ct. at 1320.

Mr. Smith promptly moved for reconsideration in light of *Martinez.* The district court granted the motion in *Smith II,* finding that New York's failure to provide Mr. Smith with counsel on his initial §440.10 motion, the first proceeding in which he could realistically argue ineffective assistance at trial, precluded the state from asserting a procedural bar to Mr. Smith's habeas petition.

In *Smith III*, the district court granted Mr. Smith's habeas petition. It found that because the state court had never reached the merits, the district court was required to review the merits *de novo*. The court did so, and found that trial counsel was ineffective for failing to make what would surely have been a winning *Massiah* motion. Alternatively, the court held that even if the state court decision could be viewed as on the merits and requiring "deference," the state court decision was "objectively unreasonable." *Smith III* (JA. 133-137).

## POINT I

**THE DISTRICT COURT CORRECTLY FOUND THAT TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO MOVE TO SUPPRESS UNDER *MASSIAH***

16

**A.  The District Court Correctly Found That Law Enforcement Violated *Massiah* By Endorsing a Situation in Which It Was Likely that a Jailhouse Informant Would Elicit Statements from Mr. Smith.**

The district court found that Ferguson became a state agent under *Massiah* after agreeing to testify against Mr. Smith, and that the detectives knew or should have known that Ferguson would continue to elicit statements from him.  When the detectives obtained Mr. Ferguson's agreement to testify, law enforcement already knew that Ferguson was a paid informant for a Brooklyn narcotics detective, had supplied information on other matters while in jail, and wanted another "feather in his cap."  His unusual relationship with his jailors allowed him access Mr. Smith at will. That Ferguson had already ingratiated himself with Mr. Smith as "another white guy," while confidentially  expressing his personal dislike for him, gave the detectives all the more reason to believe that Ferguson would elicit additional admissions.

The district court found strong reason to suspect that Ferguson had a prior significant informer/handler relationship with Det. Dellasandro. Dellasandro responded promptly to Ferguson's phone call, and saw no reason to take notes at their meeting.  Ferguson's remarkable ability to call other inmates to the library suggested a close connection with law enforcement.  The post-trial revelation in Ferguson's parole minutes that Det. Dellasandro was about to register Ferguson as a confidential informant shortly before Ferguson elicited the statements from Mr. Smith, confirmed

17

that law enforcement knew or should have known what Ferguson was likely to do, and either tacitly or expressly endorsed his actions.[7]

The district court's conclusion that a *Massiah* motion would have been granted is indisputable. Mr. Smith's right to counsel attached when he was arraigned many months earlier. *Massiah v. United States*, *supra*, 377 U.S. at 206; *Hamilton v. Alabama*, 368 U.S. 52 (1961). Once the right attaches, the Sixth Amendment imposes on the government an affirmative obligation not to question the defendant in the absence of counsel. *Massiah v. United States*, *supra*, 377 U.S. at 206; *Maine v. Moulton*, 474 U.S. 159, 171 (1985).

*Henry* teaches that once law enforcement meets with a jail house informant and singles out a target to whom the informant has access, the informant becomes a state agent as to that defendant. This is so, even where, as in *Henry*, law enforcement expressly instructs the informant not to question the target. The focus of the *Massiah*

---

[7] The district court's findings of fact in habeas proceeding are entitled to deference, and may be disregarded only if they are "clearly erroneous." *Wade v. Mayo*, 334 U.S. 672 (1948) (factual findings by the district court in a habeas case are reviewed under the clearly-erroneous standard); *Miranda v. Bennett*, 322 F.3d 171, 175-176 (2d Cir. 2003); Fed.R.Civ.P. Rule 52(a) ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous . . "); Fed.R.Civ. P. Rule 81(a)(2) ([F.R.Civ.P.] applicable to proceedings for . . . habeas corpus."). The prosecutor's assertion that, "This Court must review a district court's ruling on a petition for a writ of habeas corpus *de novo*" (Respondent's Brief, p. 19) misstates the law. *De novo* review only applies to conclusion of law. *Miranda v. Bennett, supra,* 322 F.3d at 175.

inquiry is not whether the law enforcement agent expressly instructed the informant to question the target or even whether the agent subjectively believes that this would happen.  The law is not blind to the motives of informants, their natural incentive to build cases, and the stress that often inclines a jailed defendant to talk.  *United States v. Henry*, *supra,* 447 U.S. at 274.  Rather, the *Massiah*/*Henry* focus is on the "likely . . . result" of the agent's acts.  "Even if the agent's statement that he did not intend that [the informant] would take affirmative steps to secure incriminating information is accepted, he must have known that such propinquity likely would lead to that result."  *Id.* at 271; *United States v. Birbal*, 113 F.3d 342 (2d Cir. 1997).

   Once it is determined that a jailhouse informant is a state agent, the only remaining question is whether the informant actively elicited statements.  Suppression is required where the informant actively elicits statements from the defendant, but not when the informant serves passively as a "listening post."  *Massiah v. United States, supra*, 377 U.S. at 206; *United States v. Stevens*, 83 F.3d 60 (2d Cir. 1996) (jail house informants become government agents after agreeing to testify against defendant, but no suppression because defendant initiated conversations).

   The district court was certainly correct in characterizing the *Massiah* violation here as "straightforward."  *Smith III* (JA. 138).  "Viewing the evidence in the light

most favorable to the State," *Smith III* (JA. 140), citing *Smith I* (JA. 63), the district court found that Ferguson was a seasoned informant who ingratiated himself with Mr. Smith, obtained a statement, and then contacted a detective with whom he had previously worked. That detective brought in the detective handling Smith's case and they both met with Ferguson the very next day, obtained Ferguson's agreement to testify against Mr. Smith, and returned him to a jail where he was certain to meet Mr. Smith again. Ferguson promptly initiated a series of conversations with Mr. Smith, and obtained devastating admissions. *Smith III* (JA. 139, 142).

## B. The District Court Correctly Found that Trial Counsel's Failure to Move to Suppress Under *Massiah* was Deficient

A defendant is deprived of effective assistance under *Strickland* when 1) counsel fails to make a colorable motion to suppress; 2) there are no "strategic or otherwise legitimate explanations for counsel's failure . . ," and 3) prejudice resulted from the improperly admitted evidence. *Kimmelman v. Morrison,* 477 U.S. 365, 374 (1986); *Lopez v. Greiner*, 323 F.Supp.2d 456 (S.D.N.Y. 2004).

The district court properly found that counsel's failure to move to suppress under *Massiah* fell below the level of professional competency required by *Strickland*. "The record before us does not articulate any strategic considerations accounting for counsel's failure to raise this pivotal issue, nor could counsel provide any plausible

20

explanation for neglecting to move to exclude such damning testimony." *Smith III*, (JA. 139-41). Counsel had everything to gain and nothing to lose by making a proper motion. *Harrison v. Cunningham*, 512 Fed.Appx. 40 (2d Cir. 2013).

Respondent submitted no affidavit from counsel but, based on an off the record conversation, argued that counsel believed that his motion to strike the informant's testimony for lack of proper discovery was the equivalent of a *Massiah* motion (Respondent Brief, pp. 43-44). Respondent speculated that counsel may have correctly believed that there was no basis for a *Massiah* motion (Respondent Brief, p. 30).

The district court swiftly rejected these excuses. A motion to strike for lack of "discovery" is completely different from a *Massiah* motion. An attorney is required to know the law, and is ineffective even when he requests the appropriate relief but fails to provide the court with the proper legal basis. *Ramchair v. Conway*, 601 F.3d 66, 76 (2d Cir. 2010); *People v. Clermont*, 22 N.Y.3d 931 (2013). The only plausible explanation for counsel's omission, the district court noted, was that "counsel failed to appreciate the legal significance of the *Massiah* issue." *Smith III* (JA. 145). "Although the possibility of a *Massiah* issue was briefly discussed prior to the trial," counsel never moved to suppress after the factual basis of the motion became obvious,

21

that is, "after Ferguson testified to his agreement with the detectives and his further solicitation of information from Mr. Smith." *Smith III* (JA. 145, fn. 7).

## C. The District Court Correctly Found Mr. Smith Was Prejudiced by the Improper Admission of His Statements

Respondent argues, alternatively, that even if counsel was ineffective, Mr. Smith was not prejudiced by the wrongful admission of his statements. This argument was swiftly rejected by the district court. Respondent sets forth no reason for this Court to rule otherwise.

To show prejudice under *Strickland*, a petitioner must show a "reasonable likelihood" that he would have been acquitted but for his attorney's blunders. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Harrington v. Richter*, __U.S.__, 131 S. Ct. 770, 791-92 (2011). A petitioner is not required to show that counsel's blunders "more likely than not altered the result." *Id*. at 787-788. "[T]he principal factors to be considered . . . are the importance of the . . . wrongly admitted testimony and the overall strength of the prosecution's case." *Young v. Conway*, 698 F.3d 69, 87 (2nd Cir. 2012). A defendant's confession is "probably the most probative and damaging evidence that can be admitted against him," and its wrongful admission is a strong indication of

22

prejudice. *Arizona v. Fulminante*, 499 U.S. 279, 292 (1991).

Respondent argues that Ferguson did not agree to testify against Mr. Smith until after the first library meeting, and that even if the "second and third library statements" were improperly admitted, they were merely cumulative of the first (Respondent's Brief, pp. 46-47).

The trial record, of course, was not clear whether Ferguson agreed to testify against Mr. Smith before or after the "first library statement." *Smith III* (JA. 108). The detectives, contradicting Ferguson and Respondent's argument, admitted that they met with the informant and obtained his agreement to testify *before* the "first library statement."

The district court saw no need to resolve this factual issue in order to find prejudice. The court noted that before the trial, defense counsel announced his position "that Mr. Ferguson was lying, that he learned any information he testified about from the paperwork itself, and that Mr. Smith had not told him any details of the crime." *Smith III* (JA. 149). "The details of the statements from the second two library conversations made this argument futile. Indeed, instead of being 'cumulative' to the original information, the second two library conversations added details that

23

made Mr. Ferguson credible and his testimony significantly more damaging. Additionally, a series of confessions, if made to the same person, reinforce each other and can be used to assess the credibility of the statements legally obtained. " *Smith III* (JA. 149-50).

The district court's conclusions are well founded. In the "clinic" and "first library" statements, Mr. Smith did little more than confess to what could readily be gleaned from the court papers and bill of particulars. In the "second library statement," Mr. Smith told Ferguson that a defense investigator compared the victim's blood spots and the eyewitnesses' pre-trial statements, determined that the witnesses had seen the crime from a considerable distance, and that this was "a major plus" for the identification defense. Mr. Smith did not show him any reports on this date, but made the statements orally. In the "third library statement," Mr. Smith said that he was happy that his case had been severed from that of the co-defendant, but was upset with his lawyer. The lawyer told him that his fee was $20,000, but told Mr. Smith's father that it was $25,000 (Tr2. 447).

As the district court found, no reasonable argument can be made that the admission of the second two library statements was harmless. The early statements lack the details that made the second series of statements so damaging. The second

24

and third library statements were not only prejudicial in themselves, but amplified both the significance of the two prior otherwise far less consequential statements as well as Ferguson's credibility.  *Arizona v. Fulminante, supra*, 499 U.S. at 299, 326 (separate confessions, made to a single person though easily impeachable if viewed in isolation, become difficult to discount when viewed in conjunction with the other).

There was certainly a "reasonable likelihood" that Mr. Smith would have been acquitted had the last two statements been suppressed, even if the initial ones were admissible.  As both the state trial judge and the district court observed, the remaining evidence was weak, consisting solely of the inconsistent testimony of eyewitness whose memories had faded over time.  No physical or scientific evidence linked Mr. Smith to the crime.  The trial prosecutor relied heavily on the last two statements in her summation and the jury specifically requested that they be read back.  *Smith III* (JA. 150-51).  A prosecutor's emphasis on wrongly admitted evidence is a strong indication of prejudice.  *Wray v. Johnson*, 202 F.3d 515, 526 (2nd Cir. 2000).

## D.  Respondent's Arguments that the Jailhouse Informant Did Not Become a State Agent after Agreeing to Testify Are Frivolous

Respondent seems to argue that Ferguson did not become a state agent by agreeing to testify against Mr. Smith because law enforcement never explicitly

instructed or "actually encouraged contact between them," and that Ferguson did not become a state agent because he was not expressly promised any compensation or leniency (Respondent's Brief, pp. 33, 36-37, 39).

These arguments are frivolous. *Henry* and *Moulton* expressly preclude the assertion that *Massiah* requires an "express instruction" to obtain information. In *Henry*, the agents instructed the informant *not* to elicit a statement and the High Court nonetheless found it sufficient that the agent reached an agreement with the informant and knew that the informant was likely to meet the defendant again. In *Moulton*, the High Court observed that because "[d]irect proof of the State's knowledge will seldom be available," all that is needed to establish a *Massiah* violation is "proof that the *State must have known that its agent was likely* to obtain incriminating statements from the accused in the absence of counsel." *Moulton v. Maine*, *supra*, 474 U.S. at 176 n.12 (citation and internal quotation marks omitted)(emphasis furnished). "To hold otherwise would allow the State to accomplish 'with a wink and a nod' what it cannot do overtly." *Ayers v. Hudson*, 623 F.3d 301, 310-312 (6th Cir. 2010).

Here, the detectives understood that Ferguson was a seasoned informant to whom the range of potential rewards did not have to be explained in chapter and verse. There was no need for an explicit promise. A "tacit promise" exists where the

26

government knew or should have known that the informant could reasonably believe that his cooperation would assist him in the future. *United States v. Brink*, 39 F.3d 419, 424 (3rd Cir. 1994).

Respondent fails to cite a single case in which an informant has agreed to cooperate against a defendant, subsequently elicits statements from him, and was not found to be a state agent. The proposition that an informant becomes a state agent regarding a defendant against whom he has agreed to cooperate is so basic that it barely needs elucidation. *United States v. Henry*, *supra*; *United States v. Birbal, supra*; *United States v. Stevens, supra*; *United States v. LaBare*, 191 F.3d 60, 65 (1st Cir. 1999)(prosecutor only introduces statements made by defendant to informant *before* informant agrees to cooperate against him)

In *United States v. Pannell*, 510 F.Supp.2d 185 (E.D.N.Y. 2007), the informant reported certain statements made by the defendant, a fellow inmate. The government "signed up" the informant, but warned him not to initiate any conversations. The informant was returned to jail where he continued to elicit statements from the defendant despite the warning. Relying on *Henry*, *Pannell* promptly suppressed all statements elicited by the informant after he agreed to cooperate. "The Supreme Court has made clear that certain government conduct is tantamount to sponsorship of

27

further investigation, even where the government explicitly instructs the informant to cease all questioning of the defendant." *Id.* at 191.

It is so basic that an agreement to testify renders an informant a state agent that courts have found *Massiah* violations even where law enforcement has only suggested the possibility of a future agreement. In *Ayers v. Hudson*, *supra*, for instance, the informant reported the defendant's confession to detectives and offered to testify. The detectives reached no agreement with the informant, but told him that the prosecutor was likely to contact him. The detectives returned the informant to the jail where he elicited additional statements. The Sixth Circuit unanimously found that the detectives' conduct gave the informant sufficient reason to believe that there might be an agreement. This was sufficient "to support the . . . determination that the State intentionally created a situation likely to violate Ayers' [*Massiah*] Rights . .." *Id*. at 316-17, citing *United States v. Henry*, *supra*, 447 U.S. at 271.

Respondent seems to argue that there was no true agreement because Ferguson was never explicitly offered leniency or compensation for his testimony. In *Randolph v. California*, 380 F.3d 1133 (9th Cir. 2004), the Ninth Circuit rejected precisely this type of argument. In *Randolph*, law enforcement met with the informant and expressly told him that he should not expect anything in return for his testimony about

28

the defendant's statements ("[W]e accept as true the State's contention that [the informant] was told not to expect a deal in exchange for his testimony]." *Id.* at 1144. The informant then elicited additional statements from the defendant. The Ninth Circuit suppressed the later statements, finding that the informant became a state agent under *Massiah* once he agreed to testify against the defendant, regardless of whether any promise of compensation was made.

> There is sufficient undisputed evidence to show that the State made a conscious decision to obtain Moore's cooperation and that Moore consciously decided to provide that cooperation. That cooperation rendered Moore an agent of the State. We recognize that agreed-upon compensation is often relevant evidence in determining whether an informant is acting as an agent of the State. But it is the relationship between the informant and the State, not the compensation the informant receives, that is the central and determinative issue.

*Id.* at 1144.

Finally, Respondent argues that the district court's decision is inconsistent with this Court's "bright line rule" announced in *Birbal.* (Respondent's Brief, p. 39, fn. 11). In *Birbal*, this Court held that a "roving" jailhouse informant who agrees to cooperate with the government "on everything" becomes a state agent under *Massiah* only when the government "singles" out the defendant. This is *Birbal*'s "bright line rule." Other

29

circuits, *Birbal* acknowledges, hold that a "roving" informant may qualify as a state agent. *United States v. Birbal, supra*, 113 F.3d at 346; *United States v. LaBare*, *supra*, (circuits split on whether informant needs to target specific defendant to be state agent). Here, no one disputes that Ferguson and law enforcement made an agreement that singled out Mr. Smith. *Birbal*'s "bright line rule" has nothing to do with this case.

## E. The District Court Correctly Found that Counsel Was Ineffective Under Both the *De Novo* and the AEDPA Deferential Standards

### 1. *The District Court Correctly Reviewed the State Court Decision De Novo Because the State Court Declined to Reach the Merits of Mr. Smith's Massiah/Ineffective Assistance Claim*

The state post-conviction court expressly "decline[d] to reach the merits" of Mr. Smith's ineffective counsel claim, holding that C.P.L. §440.10(3)(c) procedurally barred counsel from filing a second §440.10 motion because Mr. Smith "was in the position to adequately raise all issues he now makes in the previous [pro-se] motion but chose not to." The district court found that *Martinez v. Ryan*, *supra* removed this procedural bar because New York failed to provide Mr. Smith with counsel on the initial §440.10 motion. See, pp. 13-17, *supra*; Point II, *infra*. Since the state court failed to resolve Mr. Smith's claim on the merits, the district court correctly decided it *de novo*.

30

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified in 28 U.S.C. §2254(d), the standard governing federal habeas review depends on whether petitioner's claim has been previously "adjudicated on the merits" by a state court.  The statute reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

If a state court has not adjudicated the claim "on the merits," the district court must "apply the pre-AEDPA standards, and review *de novo* the state court disposition of the petitioner's federal constitutional claims." *Cotto v. Herbert*, 331 F.3d 217, 230 (2d Cir. 2003).  Although it is presumed that the state court addressed the defendant's claims on the merits, this presumption is rebutted if there is reason to think otherwise. *Johnson v. Williams*, ___ U.S. ___, 133 S. Ct. 1088; 2013 U.S. LEXIS 1610 (2013).

31

The AEDPA also permits *de novo* review "in those rare cases when a state court decides a federal claim in a way that is "contrary to" clearly established Supreme Court precedent. *Johnson v. Williams, supra* at **24-25, citing *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007). A state court decision is "contrary to" Supreme Court precedent if the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if the state court "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Young v. Conway, supra,* 698 F.3d at 87; *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

The district court correctly reviewed the state court decision *de novo*. The state court plainly said that it would not decide Mr. Smith's claims on the merits ("The Court declines . . ."), and nothing in the remainder of the opinion suggests that the court even considered the ineffective assistance issue in the *Massiah* context. Although the state post-conviction court mentioned in passing that "the defendant's bare claims of ineffective assistance of counsel do not meet *Strickland,*" its opinion made it clear that it never considered Mr. Smith's *Massiah* based claim. The state court not only failed to mention *Massiah*, but found that there was no prejudice *because Mr. Smith made no showing that he would have gone to trial, and not pled*

32

*guilty, except for counsel's erroneous advice* – a finding that had nothing to do with this jury tried case. This is one of those "rare" cases where it is clear that the state court did not apply Supreme Court precedent, *i.e., Massiah* and *Henry*, and *de novo* review is required. *Johnson v. Williams, supra.*

### 2. The District Court Correctly Found That Counsel Was Ineffective Even under the "Deferential" Standard Because the State Court's Decision Was "Objectively Unreasonable"

If the state court decided the issue on the merits, the habeas court must "defer" to the state court and may reverse only if the decision was not only incorrect, but "unreasonable." A state court decision is "unreasonable" where "no fair minded" jurist could agree with it. *Harrington v. Richter*, *supra,* 131 S. Ct. at 786, citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

The state court was objectively unreasonable in failing to find that counsel's failure to move to suppress under *Massiah* constituted ineffective assistance. The motion was a sure winner and would have excluded the most damning evidence in the case. There was no legitimate strategic reason for the attorney not to make the motion. No court has ever held that an informant who reaches an agreement to testify against a defendant does not become a state agent for *Massiah* purposes against that defendant where, as here, law enforcement understand that the informant and

33

defendant will have future contact. Given the weak identification testimony, the lack of any scientific or physical evidence tying Mr. Smith to the crime, and the prosecutor's repeated emphasis on the second and third jailhouse "library confessions" in her summation, no reasonable jurist could conclude that there is "no reasonable likelihood" Mr. Smith would have been acquitted had his trial attorney made a proper *Massiah* motion.

**POINT II**

**THE DISTRICT COURT PROPERLY FOUND THAT *MARTINEZ V. RYAN* REMOVED ANY PROCEDURAL BAR TO CONSIDERING MR. SMITH'S PETITION**

In *Smith II*, the district court, relying on *Martinez*, ruled that Respondent could not assert a procedural bar to Mr. Smith's habeas petition based on his failure to raise the *Massiah*/ineffective assistance claim in his *pro se* motion. This ruling was correct, and should be affirmed.

In *Martinez*, the Supreme Court held that where, under state law, an ineffective assistance of trial counsel claim must be raised in a collateral forum, an indigent petitioner's failure to raise an issue in that forum will not bar habeas review if the state failed to provide counsel or counsel was ineffective. A state must provide a defendant with at least one forum in which he can challenge the effectiveness of his trial counsel

34

with the assistance of new counsel. If the defendant is deprived of effective assistance, or deprived of counsel completely in that forum, the state may not assert the defendant's default to bar habeas review.

Respondent now argues that *Martinez* is inapplicable because Mr. Smith could have brought his claims on direct appeal where he was represented by assigned counsel. This argument reflects a serious misunderstanding of New York law. This Court, like the district court, should swiftly reject it.

New York appellate courts are prohibited from considering on direct appeal claims based on facts outside the trial record. *People v. Evans*, 16 N.Y.3d 571 (2011). Although New York courts will occasionally recognize an ineffective assistance claim brought on direct appeal, New York views ineffective assistance and due process claims "as a whole," and if a claim is based on allegations both within and outside the record, a "mixed claim" in New York's terminology, the claim must be brought through a post-conviction §440.10 motion. *People v. Lou*, 95 A.D. 3d 1035 (2d Dept. 2012), citing *People v. Maxwell*, 89 A.D.3d 1108, 1109 (2nd Dept 2011), quoting *People v. Evans*, *supra*. New York courts have expressed a strong preference that ineffective assistance claims be brought on §440.10 motions, especially where a defendant, like Mr. Smith, challenges the trial attorney's failure to make a motion to

35

suppress or some other tactical decision. These claims invariably require an inquiry into the attorney's internal thought processes which rarely appears on the record. *People v. Evans, supra; People v. Rivera*, 71 N.Y.2d 705 (1988); *Lopez v. Greiner*, *supra*.

Mr. Smith's post-conviction was plainly "mixed," and undoubtedly would have been dismissed as procedurally improper if it had been brought on direct appeal. Ferguson's parole minutes and psychiatric records were not disclosed by the prosecutor and not uncovered by Mr. Smith until well after trial. These were plainly not part of the trial record. The parole minutes related both to the *Massiah* ineffectiveness claim and the claim that the attorney was ineffective in agreeing to start trial without receiving the relevant discovery. The parole minutes and the psychiatric records were relevant to the claim that the prosecutor had committed misconduct by suppressing *Brady* material. These materials were non-record based and could only be considered on a §440.10 motion.

Respondent's contention that Mr. Smith should have brought his claim on direct appeal can only be understood as disingenuous. Respondent understood that these claims could not be resolved on the trial record alone, and submitted in opposition to Mr. Smith's §440.10 motion an account of Respondent's out of court, post-trial

36

conversations with Mr. Smith's trial counsel. Respondent persists in relying on these conversations even on this appeal. See, Respondent's Brief, pp. 43-44, fn. 12.

Moreover, C.P.L. §440.10(2)(b) provides that the trial level court must dismiss a post-conviction motion where the trial record contains all of the facts necessary for the claim to have been brought on direct appeal. Respondent never moved to dismiss Mr. Smith's post-conviction motion on these grounds – for obvious reasons – and the state post-conviction court never cited this ground as a basis for denying Mr. Smith's motion. This was a concession by Respondent that Mr. Smith's §440.10 was the proper procedural mechanism for his ineffective assistance and due process claims, and Respondent's failure to raise this argument in state court should be construed as a waiver.

In *Trevino v. Thaler*, __U.S.__, 133 S. Ct. 1911 (2013), the Supreme Court confronted a Texas procedural system strikingly similar to New York's, and held that *Martinez* precluded the state's claim that the *pro se* defendant procedurally defaulted. Texas allows ineffective assistance claims to be brought on direct appeal in theory, but, like New York, recognizes that the "vast majority" of claims must brought collaterally because "the inherent nature of most ineffective assistance" of trial counsel claims means that the trial court record will often fail to "contai[n] the

37

information necessary to substantiate" the claim. *Id.* at 1918 [citations omitted]. *Trevino* ruled that *Martinez* precludes a state from arguing under such circumstances that the defendant procedurally defaulted his ineffective assistance claim because he should have brought the claim on direct appeal instead of in the collateral proceeding. "Thus, for present purposes, a distinction between (1) a State that denies permission to raise the claim on direct appeal and (2) a State that in theory grants permission but, as a matter of procedural design and systemic operation, denies a meaningful opportunity to do so is a distinction without a difference." *Id.* at 921.

Respondent seems to argue that Mr. Smith should have brought his ineffective assistance claim on direct appeal because some of his claims may be construed as record based. This is frivolous. Respondent simply ignores New York's "mixed claim" doctrine which by definition means that record based claims must be brought with non-record based claims in a single post-conviction motion. "In this case, since some of the defendant's allegations of ineffectiveness involve matters appearing on the record, while others involve matters that are outside the record, the defendant has presented a "mixed claim" of ineffective assistance. *People v Maxwell*, *supra*, 89 A.D.3d at 1109.

Finally, Respondent argues that Mr. Smith should have brought his claims on

38

direct appeal because the habeas court ultimately granted him relief on the *Massiah*/ineffectiveness claim which, according to Respondent, was primarily record based (Respondent's Brief, pp. 55-56). This argument is both frivolous and disingenuous. First, the procedural validity of Mr. Smith's state §440.10 motion cannot be undermined retroactively by the habeas' court ultimate acceptance or rejection on the merits of claims that were procedurally valid when brought; second, Respondent implicitly conceded that Mr. Smith's *Massiah* based claim had a non-record based element when it introduced non-record based evidence in opposition; and third, the habeas court in fact included Ferguson's parole minutes in its assessment of the *Massiah* issue.

## Conclusion

This Court should affirm the district court's grant of Mr. Smith's petition for a writ of habeas corpus.

Dated: February 4, 2014

Respectfully submitted,
s/ Lloyd Epstein

LLOYD EPSTEIN, ESQ.
EPSTEIN & WEIL, LLC
225 Broadway, Suite 1203
New York, NY 10007
(212) 732-4888

39

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief complies with the requirements of Fed.R.App.P. 32(a)(5) and (6) because it has been prepared in a 14-point proportionally spaced font.

I further certify that this brief complies with the type-volume limitations of Fed.R.App.P. 32(a)(7)(B) because it contains 10,154 words, excluding the parts of the brief exempted under Fed.R.App.P. 32(a)(7)(B)(iii), according to the count of WordPerfect.

New York, New York
Dated: February 4, 2014

s/ Lloyd Epstein_____
Lloyd Epstein, Esq.